UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cr-60282-BLOOM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ISIDRO CAMILO SANTOS,

    Defendant.
_____/

### ORDER ON MOTION FOR EMERGENCY HEARING FOR COMPASSIONATE RELEASE

**THIS CAUSE** is before the Court upon Defendant Isidro Camilo Santos's ("Defendant") Motion for Emergency Hearing for Compassionate Release, ECF No. [57] ("Motion"), filed on July 27, 2021. The Government filed its Response, ECF No. [59], to which Defendant has not filed a reply. The Court has carefully reviewed the Motion, all opposing and supporting submissions, any relevant exhibits, the record in this case, the applicable law, and is otherwise fully advised. For the reasons discussed below, the Motion is denied.

### I.    BACKGROUND

On November 12, 2019, Defendant entered into a guilty plea for one count of conspiring to possess with the intent to distribute a mixture and substance containing five kilograms or more of cocaine, in violation of 21 U.S.C. § 841. ECF No. [25]. Defendant was sentenced to a term of imprisonment of 36 months on January 24, 2020. ECF No. [42]. Defendant is 41 years old and currently housed at FCI Allenwood Low, after being transferred following the closure of Moshannon Valley Correctional Facility. Defendant is scheduled to be released from custody on April 9, 2022.

Defendant previously requested compassionate release due to the ongoing COVID-19 pandemic because his health conditions put him at increased risk. ECF No. [49]. The Court denied his previous request without prejudice because Defendant failed to establish that he had exhausted his administrative rights with the Bureau of Prisons ("BOP"). *See* ECF No. [52]. In the Motion, Defendant again requests compassionate release in light of the COVID-19 pandemic because he has multiple health conditions that place him at serious risk of COVID-19 complications. *See* ECF No. [57]. Specifically, Defendant requests that he be released to Immigration and Customs Enforcement ("ICE"), so that he may be immediately deported to the Dominican Republic. The Government opposes the Motion. ECF No. [59].

SARS-CoV-2, the novel coronavirus, and COVID-19, the disease it causes, have spread across the world and have impacted every person's life. The United States is currently reporting more confirmed cases of COVID-19 and resulting deaths than any other country, with close to 37,259,886 confirmed cases and over 623,244 reported deaths as of August 19, 2021.[1] The COVID-19 pandemic poses a serious danger to society at large, and poses a higher risk to incarcerated individuals who are unable to practice public health precautions that are otherwise available to the general public, such as social distancing practices. In addition, the new and more contagious Delta variant of the coronavirus is now the predominant strain of the virus in the United States and can cause more severe illness in unvaccinated individuals.[2]

As a result of this dynamic, unpredictable, and unprecedented situation, former Attorney General William Barr urged the BOP to move vulnerable inmates out of penal institutions and into

---

[1] *COVID Data Tracker*, Centers for Disease Control and Prevention, https://covid.cdc.gov/covid-data-tracker/#trends_dailytrendscases (last updated August 19, 2021).

[2] *Delta Variant: What We Know About the Science*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html (last updated August 19, 2021).

home confinement, where appropriate. *See* Mem. from Attorney Gen. William Barr for Dir. of Bureau of Prisons re: Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (Apr. 3, 2020), https://www.justice.gov/file/1266661/download ("Memorandum"). The Memorandum identifies several facilities that have been particularly affected and should be given priority in the BOP's consideration of implementing home confinement, including FCI Oakdale, FCI Danbury, and FCI Elkton. *Id.* at 1. The former Attorney General made the express finding that extant emergency conditions are materially affecting BOP functioning and has directed the BOP to immediately maximize transfers to home confinement for all eligible inmates at the specifically named facilities and other similarly situated facilities where COVID-19 is materially affecting operations. *Id.* The Memorandum further directs the BOP to review all inmates who have COVID-19 risk factors, as established by the Centers for Disease Control and Prevention ("CDC"), to determine their suitability for home confinement, while also emphasizing the importance of protecting the public from individuals who may pose a danger to society, and recognizing the need to avoid over-burdening law enforcement with "the indiscriminate release of thousands of prisoners onto the streets without any verification that those prisoners will follow the laws when they are released . . . and that they will not return to their old ways as soon as they walk through the prison gates." *Id.* at 2-3. Finally, the Memorandum stresses the need for careful and individualized determinations regarding the propriety of releasing any given inmate to home confinement and discourages indiscriminate releases. *Id.* at 3.

## II.   LEGAL STANDARD

"Generally, a court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Pubien*, 805 F. App'x 727, 729 (11th Cir. 2020) (quoting 18 U.S.C. § 3582(c)).

> "The authority of a district court to modify an imprisonment sentence is narrowly limited by statute." [*United States v. Phillips*, 597 F.3d 1190, 1194-95 (11th Cir.

2010)]. Section 3582(c) of Title 18 provides that the district court may not modify a defendant's imprisonment sentence except: (1) if the Bureau of Prisons files a motion and extraordinary or compelling circumstances warrant modification or if the defendant is at least 70 years old and has served 30 years in prison; (2) if the modification is expressly permitted by statute or Federal Rule of Criminal Procedure 35; or (3) if the defendant's original sentencing range has subsequently been lowered as a result of an amendment to the Guidelines by the Sentencing Commission. 18 U.S.C. § 3582(c).

*United States v. Shaw*, 711 F. App'x 552, 554-55 (11th Cir. 2017); *see also United States v. Celedon*, 353 F. App'x 278, 280 (11th Cir. 2009); *United States v. Diaz-Clark*, 292 F.3d 1310, 1316-18 (11th Cir. 2002). Thus, "[t]he law is clear that the district court has no inherent authority to modify a sentence; it may do so only when authorized by a statute or rule." *United States v. Rivas*, 800 F. App'x 742, 745 (11th Cir. 2020) (quoting *United States v. Puentes*, 803 F.3d 597, 605-06 (11th Cir. 2015)); *see also United States v. Llewlyn*, 879 F.3d 1291, 1296-97 (11th Cir. 2018) (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)).

The compassionate release provision, § 3582(c)(1)(A), states:

(c) Modification of an imposed term of imprisonment.— The court may not modify a term of imprisonment once it has been imposed except that—
(1) in any case—
(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) [18 U.S.C. § 3553(a)] to the extent that they are applicable, if it finds that—
   (i) extraordinary and compelling reasons warrant such a reduction . . . .
   . . . .
and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

The existing policy statement provides that,

Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

> (1)(A) extraordinary and compelling reasons warrant the reduction; or
>
> > (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3) the reduction is consistent with this policy statement.

**Commentary**

**Application Notes:**

1. **Extraordinary and Compelling Reasons.**—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

> (A) **Medical Condition of the Defendant.**—
>
> > (i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> >
> > (ii) The defendant is—
> >
> > > (I) suffering from a serious physical or medical condition,
> > >
> > > (II) suffering from a serious functional or cognitive impairment, or
> > >
> > > (III) experiencing deteriorating physical or mental health because of the aging process,

>   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) **Age of the Defendant.**—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.
>
> (C) **Family Circumstances.—**
>
>   (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
>   (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) **Other Reasons.**—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S. Sent'g Guidelines Manual § 1B1.13 (U.S. Sent'g Comm'n 2018).

Although the existing policy statement still assumes compassionate release "may be granted only upon motion by the Director of the Bureau of Prisons," the Court of Appeals for the Eleventh Circuit recently decided that § 1B1.13 is applicable for all § 3582(c)(1)(A) motions, whether filed by the BOP or by a defendant directly, and that courts do not have discretion to develop "other reasons" to justify a reduction in a defendant's sentence. *See United States v. Bryant*, 996 F.3d 1243, 1248 (11th Cir. 2021). Accordingly, the Court must apply § 1B1.13 to determine whether extraordinary and compelling circumstances exist.

Moreover, § 3582 delineates how this Court should analyze whether a defendant is entitled to a sentence modification.

> *First*, when the defendant brings the motion himself, the Court must ascertain whether he "has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [whether there has

been a] lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(a). *Second*, the Court should "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *Id. Third*, the Court should turn to the "extraordinary and compelling reasons" test . . . . And *fourth*, the Court should determine whether the defendant poses a "danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." *Id.*

*United States v. Stuyvesant*, 454 F. Supp. 3d 1236, 1238 (S.D. Fla. 2020).

Thus, in order to grant Defendant's request pursuant to § 3582(c)(1)(A), the Court must: (1) find that Defendant has exhausted his administrative remedies with the BOP; (2) weigh the relevant § 3553(a) factors; (3) conclude that extraordinary and compelling reasons warrant compassionate release in this case; and (4) determine that Defendant is not a danger to the community. Moreover, Defendant bears the burden of establishing that compassionate release is warranted. *See United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (explaining that "a defendant, as the § 3582(c)(2) movant, bears the burden of establishing that" compassionate release is warranted, but that, even where a defendant satisfies this burden, "the district court still retains discretion to determine whether a sentence reduction is warranted").

### III. DISCUSSION

In his Motion, Defendant requests compassionate release, contending his health conditions, including type 2 diabetes, hypertension, and tuberculosis, place him at risk of COVID-19 complications. He argues further that due to facility lockdowns and being subject to an immigration detainer, he has been unable to access prison programming and it renders his period of incarceration harsher than necessary. The Government opposes the request, arguing that Defendant again has failed to exhaust his administrative remedies with the BOP, and notwithstanding Defendant's medical conditions, some of which are not supported by the medical records, he fails to present extraordinary and compelling reasons to warrant compassionate release. Indeed, the Government argues that Defendant has been fully vaccinated against COVID-19, and

7

that his medical conditions are otherwise well-managed. Upon review and consideration, the Court concludes that Defendant does not present circumstances warranting compassionate release.

### A. Exhaustion of administrative remedies

As the Government correctly notes in its Response, Defendant has failed to establish that he exhausted his administrative rights with the BOP. Defendant has attached what appears to be a portion of an email exchange in which he requests compassionate release. *See* ECF No. [57] at 6. The response purportedly denying his request, however, is not signed by any individual, nor is there any indication that it came from a prison official. As such, Defendant has not provided the Court with any indication that he submitted a proper request for compassionate release to the warden of his facility, much less that thirty days have elapsed since making such a request. This failure to exhaust BOP remedies—or to even submit a request—alone is a sufficient basis to deny the Motion. However, even if Defendant had satisfied the exhaustion requirement, as explained below, he fails to demonstrate that extraordinary and compelling circumstances exist in this case.

### B. Extraordinary and compelling circumstances

#### i. Medical conditions

Recently updated CDC guidance indicates that the following health conditions can make adults of any age more likely to get severely ill due to COVID-19: cancer; chronic kidney disease; chronic lung diseases, including asthma (moderate to severe); dementia or other neurological conditions; diabetes (type 1 or type 2); Down syndrome; heart conditions, such as heart failure, coronary artery disease, cardiomyopathies, or hypertension; HIV infection, immunocompromised state (weakened immune system); liver disease; overweight and obesity; sickle cell disease or

thalassemia; current or former smoking; solid organ or blood stem cell transplant; stroke or cerebrovascular disease; and substance use disorders.[3]

However, in keeping with § 1B1.13,[4] in order for Defendant's medical conditions to provide justification for compassionate release, the Court must find that Defendant is either suffering from a terminal illness, or that his serious physical or medical conditions, or serious functional or cognitive impairments, substantially diminishes his ability to provide self-care and from which he is not expected to recover. *See* U.S. Sent'g Guidelines Manual § 1B1.13, cmt. 1(A). Upon review of Defendant's Motion and his medical records, the Court concludes that the record in this case does not support either finding under the Sentencing Guidelines.

Defendant asserts that he suffers from type 2 diabetes, hypertension, and tuberculosis, and previously contracted COVID-19. However, his medical records, which have been provided by the Government, do not fully support Defendant's contentions. For example, although Defendant claims to have tuberculosis, his medical records reflect that he has been treated prophylactically for latent tuberculosis, and that his pulmonary health is otherwise unremarkable. *See* ECF No. [59-1] at 4-5 (noting no respiratory distress, tachypnea, crackles, rhonchi, or wheezing, and that his lungs are clear to auscultation). In addition, there is no indication in Defendant's medical records that he contracted COVID-19. Moreover, although the Court recognizes that Defendant suffers from hypertension and diabetes, both conditions designated by the CDC as increasing the possibility of severe illness from COVID-19, the records do not indicate that his conditions are

---

[3] *People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated August 20, 2021).

[4] Recent Eleventh Circuit precedent in *Bryant* makes clear that this Court is strictly confined to consideration of only the circumstances described in the Sentencing Guidelines in determining whether extraordinary and compelling circumstances exist. 996 F.3d at 1248.

terminal. Further, Defendant's medical records do not reflect that his treatments while incarcerated are inadequate to care for his medical needs.

Indeed, Defendant's medical records show that Defendant receives adequate ongoing treatment and care. *See, id.* at 60-61 (list of Defendant's medications); 20 (noting that "hypertension doing well on current lisinopril" and "diabetes reports doing well on current metformin"). The Court is certainly sympathetic to Defendant's health conditions and his concerns regarding COVID-19 outbreaks in prison facilities. However, Defendant's medical records otherwise do not support the conclusion that he is unable to perform activities of daily living or provide self-care.[5] "[T]he BOP Director has not found COVID-19 alone to be a basis for compassionate release." *United States v. Harris*, No. 2:12-cr-140-FtM-29DNF, 2020 WL 1969951, at *2 (M.D. Fla. Apr. 24, 2020) (citing *United States v. Eberhart*, No. 13-cr-313-PJH-1, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020) ("General concerns about possible exposure to COVID-19 do not meet the criteria for extraordinary and compelling reasons for a reduction in sentence . . . .")). Defendant is now fully vaccinated against COVID-19, and while it does not guarantee that he cannot contract the virus, it certainly significantly decreases the likelihood that he will. In sum, the medical records in this case reflect that Defendant is receiving adequate treatment for his medical conditions, and there is no indication that his ability to provide self-care in the prison setting is significantly diminished.

Moreover, even if Defendant were able to demonstrate the existence of extraordinary and compelling circumstances in this case based upon his medical conditions, he is nevertheless subject to an immigration detainer, as he acknowledges. Although Defendant asserts that he would not

---

[5] The Court notes that FCI Allenwood Low, where Defendant is housed, is currently reporting 0 COVID cases among staff and inmates. *See COVID -19 Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last accessed August 20, 2021).

contest deportation, he would nevertheless likely be transported into ICE custody during the pendency of removal proceedings and actual removal. *See United States v. Camacho-Duque*, No. 18-80238-CR, 2020 WL 5951340, at *7 (S.D. Fla. Oct. 5, 2020) ("[R]elease from BOP custody, in Defendant's case, does not mean release from government custody. Because Defendant is subject to an immigration 'hold' or detainer, upon execution of this Order, the BOP will surrender Defendant to ICE. From that point forward, Defendant, having been convicted of an 'aggravated felony' within the meaning of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(43)(B), will be subject to mandatory, indefinite detention—that is, detention until she either prevails on her claim for relief or is deported from the United States.").

Additionally, and equally important, as the Government notes in its Response, releasing Defendant into ICE custody would likely be harmful to Defendant's interests in ensuring proper medical care for his medical issues and avoiding exposure to COVID-19. "Were the Court to grant Defendant compassionate release, he may end up leaving . . . only to enter an immigration facility that is less equipped to address his medical needs, and where he is no less exposed to Covid-19." *United States v. Perez Solorio*, No. 3:11-CR-138-J-32JRK, 2020 WL 6292558, at *2 (M.D. Fla. Oct. 27, 2020). Considering the course of treatment Defendant has received to date for his medical issues, the Court would be reluctant to grant release into circumstances that would likely place Defendant at greater risk. *See United States v. Sandoval*, No. CR14-5105RBL, 2020 WL 3077152, at *5 (W.D. Wash. June 10, 2020); *see also United States v. Joaseus*, No. 9:16-CR-80011, 2020 WL 3895087, at *2 (S.D. Fla. July 10, 2020) (noting that, upon completion of the term of imprisonment, the defendant will be surrendered to ICE custody to await removal proceedings and will likely be held at an immigration detention facility, which, "like prisons, have had confirmed cases of COVID-19 and are implementing measures to respond to the spread of the disease in their

Case 0:19-cr-60282-BB Document 60 Entered on FLSD Docket 08/23/2021 Page 12 of 13

Case No. 19-cr-60282-BLOOM

populations," and concluding that a sentence reduction was unwarranted because the defendant presented no indication that was a lesser likelihood of exposure to COVID-19 at an immigration detention facility than at a BOP facility); *see also United States v. Chavez*, No. 1:95-CR-00361, 2020 WL 2322917, at *2 (S.D. Fla. May 11, 2020) (same).

    ii. Other reasons

Defendant contends that the lockdowns he has experienced due to COVID-19 and his ineligibility as a result of the immigration detainer have made it impossible for him to avail himself of prison programming or to be considered for release to a halfway house. As such, his incarceration has been harsher than necessary. He asks the Court to consider these circumstances as extraordinary and compelling.

However, the Court may not. The Eleventh Circuit has made it clear that, in determining the existence of extraordinary and compelling circumstances, the Court is confined to consideration of the circumstances described in the applicable Sentencing Guidelines Policy Statement. District Courts in the Eleventh Circuit do not have discretion to develop "other reasons" to justify a reduction in a defendant's sentence. *Bryant*, 996 F.3d 1243 at 1248.

Defendant has therefore failed to establish that extraordinary and compelling circumstances exist for either medical or other reasons, such that compassionate release would be warranted in his case.[6]

## C. CONCLUSION

Accordingly, Defendant's Motion, **ECF No. [57]**, is **DENIED**.

---

[6] Because Defendant's Motion fails to establish any extraordinary and compelling circumstances, the Court need not address the remaining considerations under § 3553(a) or § 3142(g).

Case No. 19-cr-60282-BLOOM

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 20, 2021.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record